DAN SIEGEL, SBN 56400
NEIL COLIN SATTERLUND, SBN 286673
SIEGEL & YEE
499 14th Street, Suite 300
Oakland, California 94612
Telephone: (510) 839-1200
Fax: (510) 444-6698

DENNIS CUNNINGHAM, #112910
115-A Bartlett Street
San Francisco, CA 94110
(415) 285-8091/fax (415) 285-8092

Attorneys for Plaintiff
ALONZO SMITH

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALONZO SMITH,<br><br>    Plaintiff,<br><br>v.<br><br>R.T.C. GROUNDS, Warden;  G. ELLIS;, Medical CEO; RICHARD MACK, M.D.; JOERG WITTENBERG, M.D.; V.C. MUNK, D.D.S.; A. KNORTON, D.D.S.; (fnu) BAKER, R.N.;  (fnu) SENISI, L.P.N.; C.O. (fnu)PARA; and JOHN & JANEDOEs, Nos. ONE through TWENTY, inclusive,<br><br>    Defendants. | **Case No. C-13-0246-PJH (PR)**<br><br><br><br>**FIRST AMENDED COMPLAINT**<br><br>Jury Trial Demanded |

The above-named undersigned attorneys hereby appear for the plaintiff herein, Alonzo Smith, and pursuant to the Court's Order of Dismissal, etc., dated February 13, 2013, granting plaintiff leave to amend his *pro* se Complaint, now submit and propose to the Court a new counseled version, as follows:

*Smith v. Grounds et al.,* Case No. C-13-0246-PJH (PR)
First Amended Complaint

**INTRODUCTION**

1. The plaintiff complains of a sustained, deliberate and concerted failure and refusal by defendant medical, dental and correctional staff members at both the Clinical Treatment Center ("CTC") and the 'A Facility' housing unit, at Salinas Valley State Prison ("SVSP"), in Soledad, California, for the whole past year and more, to provide him with adequate and proper medical treatment and dietary service, made necessary by a severe, compound fracture of his jaw.  To treat the fracture, a doctor wired the broken sections of his lower jaw together, and wired his upper and lower jaws together in a closed position, to immobilize the fractured section so it could heal; and he was provided with a liquid diet, at least at first.  When plaintiff later became ill and began to vomit, and could not expel the vomit because his mouth was wired shut, a CTC nurse cut those wires, to prevent him from choking.  He was discharged from the CTC a short time later, and returned to the A Facility, without his jaws being wired back together, leaving him at serious risk of complication, failure to heal, and further injury—all of which predictably occurred.

2. When he was returned to the A Facility, with a physician's order for a "soft-chopped" diet, Facility staff—including various commanders and supervisors, nurses in the facility infirmary, kitchen personnel, and line officers, some known but several others unidentified at this time—failed and refused to provide him with the specially-prepared food he needed for basic nourishment.  His attempts to feed himself on regular institutional fare brought about a certain amount of chewing, which caused him severe additional pain, compounded upon the pain he was already experiencing from the mending fracture.  The medicine he was given for the pain, generally inadequate in any case and now taken on a chronically empty stomach, aggravated an ulcer condition and thus increased his unnecessary suffering.  All of his attempts through various channels to receive his needed soft diet, to get attention to the complications to the fractures which arose from his semi-involuntary chewing, and for the pain he was experiencing in his jaw and his stomach, were knowingly denied and

---

*Smith v. Grounds et al.,* Case No. C-13-0246-PJH (PR)
First Amended Complaint

refused by various defendant doctors, nurses and other staff, and often met with threats, insults and mockery.  Defendant Munk, a prison dentist the plaintiff sought help from, told him he "deserved" the injury he had sustained, and that, "The pain you have is the pain you're gonna have" in the future…

3. Plaintiff's predicament has now continued for more than a year at SVSP, during which time his jaw has failed to heal properly, and continues to cause him great pain and hinders his ability to eat, and defendants—both medical and custody staff, including ranking supervisors— through deliberate indifference to his serious medical needs amounting to cruel and unusual punishment under the Eighth Amendment— have continuously refused plaintiff the medical treatment he needs to deal with the jaw fracture, the necessary modified diet, and pain relief.  Therefore he seeks equitable intervention by the Court, to secure the necessary reasonable medical attention, appropriate diet, and pain relief, as well as compensatory and punitive damages against defendants for aggravated, purposeful violation of his basic rights.

## JURISDICTION & VENUE

4. This action arises under the Civil Rights Acts, 42 U.S.C. §1983, *et seq.*, to redress actions under color of state law which violated the plaintiffs' constitutional rights.  The Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343.  Venue is proper in the Northern District of California because the events, acts and or omissions giving rise to the claim occurred in this District.

## INTRADISTRICT ASSIGNMENT

5. The events or omissions giving rise to the claim occurred in SVSP in Monterey County.  Plaintiff's initial complaint was dismissed with leave to amend by the Oakland Division of this Court.  As a prisoner civil rights action, assignment to the Oakland Division is proper pursuant to Local Rule 3-2(c).

///

---

*Smith v. Grounds et al.,* Case No. C-13-0246-PJH (PR)
First Amended Complaint

3

## PARTIES

5. **Plaintiff** ALONZO SMITH (H-63329) is an inmate at SVSP. He suffered a fractured jaw in an altercation with another prisoner on March 28, 2012.

6. **Defendants**: The defendant R.T.C. GROUNDS is the Warden of SVSP, who had overall command and responsibility for the prison, and for the general negative and hostile attitude of staff members in all sections at all levels towards prisoners, and thus the plaintiff, and for the apparent institution-wide culture of antagonism and cruelty which the plaintiff fell victim to in this case and still suffers under.  It is not alleged that defendant had actual knowledge of the prolonged maltreatment and pain and suffering plaintiff has experienced, described within—although he may have had, the fact is unknown—but the systematic deliberate indifference to plaintiff's medical needs on the part of virtually the whole staff  he is in charge of, from ranking commanders on down, fairly and reasonably should be laid at his door within the rule of *Farmer v. Brennan*.  In addition, he is a proper defendant with respect to plaintiff's claims for equitable relief herein See *post*, p.11); and he is thus sued in both his official and individual capacities.

7. Defendant G. ELLIS is the C.E.O. of Medical Services, and so stands in the same relation to the Clinical Treatment Center and presumably other medical facilities at SVSP as the defendant Warden does to the institution as a whole; and it is also likely in the circumstances that he had actual knowledge of the plaintiff's case, and the stonewalling tactics his subordinates were using to thwart the plaintiff.  He is also a proper defendant on the equitable claims, and is sued in his official and individual capacities.

8. Defendant RICHARD MACK, MD, is a primary care physician assigned to the infirmary in the "A Facility" at Salinas Valley State Prison (SVSP), who repeatedly and explicitly refused necessary medical care to the plaintiff.

9. Defendant JOERG WITTENBERG, MD, is an independent physician and oral surgeon who, apparently under contract, sees patients at the A Facility and possibly

elsewhere at SVSP; who did the original surgery on plaintiff and (in a manner of speaking) followed his case thereafter.

10.     Defendant V.C. MUNK, D.D.S., is a dentist practicing at SVSP, who plaintiff was referred to and sought help from repeatedly, to no avail.  Defendant (fnu) KNORTON was another dentist also apparently involved in denying needed care and assistance to the plaintiff.

11.     Defendants (fnu) BAKER, RN and (fnu) SENISI, LVN are nurses who were employed at SVSP and assigned to the infirmary at A Facility, who refused all of plaintiff's requests for medical help.

12.     Defendant (fnu) PARA is a 'corrections' officer ("CO") who was assigned to the CTC and who, along with others including one or more DOE defendants kept the plaintiff confined to his cell, refusing to allow him out for recreation or fresh air, during the entire six weeks he was at CTC, in April and May 2012; and who also refused to accept and process his written grievance ("602") complaining of this.

13.     Defendants JOHN & JANE DOES Nos. 1-20 are or were, <u>First</u>, SVSP commanders and supervisors on various shifts at both the CTC and A Facility, who refused all requests, written and oral, in person and through a corrections officer who tried to assist plaintiff, for his proper diet, and for a transfer back to CTC when he could not obtain the diet in A Facility; <u>Second</u>, other medical personnel at A Facility and the CTC at SVSP who were involved in various knowing and deliberate failures and refusals to assist plaintiff with his serious medical needs; and <u>Third</u>, other custody personnel at A Facility and the CTC at SVSP who were involved in various knowing and deliberate failures and refusals to assist plaintiff with his serious medical needs and/or refused and/or quashed his written and oral grievances and requests for medical help.  Plaintiff will timely move to amend to insert the True Names when the identities can be learned.

///

*Smith v. Grounds et al.,* Case No. C-13-0246-PJH (PR)
First Amended Complaint

5

## STATEMENT OF FACTS

**Plaintiff Treated for a Broken Jaw.**

14. On March 30, 2012, two days after an altercation left him with a double-broken jaw, the plaintiff was seen by defendant Dr. Wittenberg in A Facility at SVSP, and ordered transferred to the clinical center for treatment. Dr. Wittenberg diagnosed a 'severely displaced right subcondylar fracture and right parasymphyseal fracture', meaning plaintiff's lower jaw was broken in two places: in front, just behind his chin, and in the right rear, near the hinge with the upper jaw. This he treated with a "closed reduction," whereby he worked the broken sections into their proper place, wired them in place so the breaks could heal, and wired the jaws shut to prevent movement which would disrupt the healing process. Plaintiff was placed on a liquid diet, taken through a straw.

15. Plaintiff spent six weeks at the CTC, during which entire time he was kept confined to his cell for no good reason, and refused any opportunity to go to the exercise yard. He was continually harassed, and his pain and suffering mocked by defendant PARA and other Doe Defendant members of the CTC custody staff; and CO PARA coldly refused to accept and process plaintiff's written grievance forms.

16. On May 6, 2012, still at CTC, plaintiff was taken ill and began vomiting violently. Staff members called Dr. Wittenberg—or said they did—but he did not respond. Various Doe defendants on the CTC staff denied plaintiff assistance for two days; then---evidently because of the life-threatening choking hazard he faced in continuing to vomit while his mouth was wired shut---a nurse cut the wire holding his jaws shut, to allow him to clear his mouth. His jaw fracture had not healed, and the pieces of his lower jaw remained wired together, but the upper and lower jaws were not rewired together to hold his mouth shut, and the fracture quiet.

17. On May 9, 2012, defendant PARA told plaintiff he was being transferred back to A Facility from the CTC Hospital. Plaintiff protested that he would be unable to obtain the liquid diet he needed for his jaw to heal in A Facility, but a CTC Sergeant, a

*Smith v. Grounds et al.,* Case No. C-13-0246-PJH (PR)
First Amended Complaint

6

likely Doe defendant told him the bed space was needed.  Plaintiff asked to speak to the Lieutenant (Doe) in charge at CTC, but the Sgt. Doe returned to tell plaintiff the Lieutenant had said plaintiff would either return to A Facility or go to the Hole (punitive isolation).  Plaintiff was sent back to A Facility with an order for a "soft-chopped diet," signed by a Dr. Tuvera—who plaintiff never saw or heard of, before or since—and witnessed by 'Registered Dietician' C. Watson.

18. On that day plaintiff visited the A Facility infirmary and informed staff members there that he could not eat regular meals because of the condition of his jaw.  Corrections Officer Canchola, assigned to assist prisoner-patients at the clinic, said she would talk to the infirmary doctor, defendant MACK, but later returned to report the doctor had pronounced plaintiff's problem "a dental issue," and refused to become involved.

19. The officer then said she would bring the request for the required diet to the A Facility supervisors' office, but she returned to report that the chain of command, the captain, lieutenant and sergeant, three more John/Jane Doe defendants had told her (falsely) they could do nothing about the problem because it was "a medical issue."  She said that kitchen staff had told her they were also unable to help plaintiff.  That evening CO Canchola reported to plaintiff that she had approached the evening shift supervisors, two more Doe defendants, Lieutenant and Sergeant, and reported that they also refused to do anything.

20. The officer told plaintiff that since he apparently would be unable to get the special diet ordered for him at the A Facility he should be returned to the CTC.  When she called to try to arrange for his transfer back, however, a supervisor at CTC, possible Doe, told her there was no bed space for plaintiff at the CTC and that he should just "do the best he can" to eat, despite being unable to move his jaws without a great spike in the pain he was already steadily experiencing from the fracture(s).

21. The next day at breakfast time, plaintiff told CO Canchola he had only had water since returning to A Facility, and was very hungry.  She went to the supervisors'

*Smith v. Grounds et al.,* Case No. C-13-0246-PJH (PR)
First Amended Complaint

7

office and again requested that he either be given his special, or be returned to CTC immediately if it could not be provided at A Facility. She told plaintiff that all three A Facility supervisors, a Captain, a Lieutenant, and a Sergeant Doe (where it is unclear at this time if these were the same or different from the commanders she consulted the day before), also told her (falsely) that they could not help, because it was a medical issue.

22. The next day, May 11, plaintiff asked CO Canchola to ask the A Facility dentist, Defendant MUNK, if he would assist in getting his special diet. She reported back that defendant MUNK refused to help him. Plaintiff also went to the A Facility infirmary contacted defendants BAKER and SENISI, both A Facility nurses, to request his medically required diet from them. Both falsely stated there was nothing they could do, and refused to help him.

23. In the next days, plaintiff continued to repeatedly request, petition and beg various defendants in A Facility to provide him with his medically needed special diet, to no avail. He submitted or attempted to submit numerous Health Care Services Request Forms (CDC Form 7362), but received no response. On or about May 15, 2012, desperately hungry, plaintiff attempted to eat a portion of the regular meal served; but this required that he chew tiny pieces, despite the severe pain even that slight jaw movement caused him. As he did so, he felt and heard a loud, extremely painful pop in his jaw.

**"The pain you have is the pain you're gonna have"**

24. Thereafter, between May 16, and June 5, 2012, plaintiff submitted an Emergency Health Care Services Request Form every day, but received no response to any of them. At length, defendant BAKER told him there would be no response to his requests, and said in a harsh tone, "Why don't you stop writing these fucking requests and cluttering up my (in)box?!"

25. On May 16, 25, and 31, 2012, plaintiff Smith again went to the A Facility Clinic to see the dentist, Defendant MUNK, and told him he was in constant pain, and that it was impossible for him to chew regular meals, and again requested the special

diet that had been ordered for him.  Dr. MUNK refused to help.  He told the plaintiff that he "deserved" the injury he had suffered, and said, "The pain you have is the pain you're gonna have."

26.   On June 6, 2012, plaintiff was seen by Defendant WITTENBERG, who informed him that he needed additional surgery due to the damage that had been caused by his efforts to chew regular meals.  When he again pleaded for his special diet, Dr. WITTENBERG informed plaintiff that he had not received his diet because the staff was "too lazy" to provide it; but the defendant refused to do anything or speak to anyone to help plaintiff get the diet.

27.   On July 25, 2012, plaintiff was seen by defendant KNORTON, a dentist at SVSP, who noted that he was suffering pain from trying to chew regular food while his broken jaw was in the process of healing, but fell in line with defendants WITTENBERG and MUNK in their refusal to help him get the special diet.

28.   Plaintiff saw defendant WITTENBERG again, also on July 25, and again the doctor refused to help him.  He told plaintiff that his jaw was the worst he'd ever seen, and would require reconstructive surgery, but said such surgery would never be approved, because it would cost too much.  Afterwards, the defendant attempted to cover up this untoward frank admission by falsely reporting in his Progress Notes that the plaintiff had refused surgery.

29.   Plaintiff saw the A Facility dentist, defendant MUNK, again on August 15, 2012, and told him he could hear and feel cracking and grinding when he tried to bite, and that it was very painful, and he again requested the special diet.  Dr MUNK again refused to help him, said there was nothing he could do.

30.   Since these events and encounters the plaintiff has continued to suffer constant severe pain in his jaw, which apparently remains unhealed; and the medicine he is given is unsuited and/or inadequate to stanch the pain he experiences, all the time.  He still cannot eat normally, and so is constantly hungry; he has lost weight, and his speech has also been significantly affected.  The grinding sounds his jaw makes wake

*Smith v. Grounds et al.,* Case No. C-13-0246-PJH (PR)
First Amended Complaint

9

him up at night, disturbing his rest.  Defendants still refuse to provide him with his medically required diet.

**Liability of the Warden and Medical C.E.O.**

31.  As noted, plaintiff complains that the defendant Warden, GROUNDS, and the medical 'CEO', defendant ELLIS, established—and do still govern, and knowingly maintain and indulge and condone---the system and practices and hostile attitudes in and by which their subordinates have left the plaintiff in torment for the last thirteen months, with no relief in sight, and denied him his rights; and he avers it is fair to surmise that the two defendant chieftains knew or should have known that he—and he believes numerous others—was at risk of suffering and did suffer constitutional deprivations as described herein, and so should be held liable for his injuries and losses as well as ordered to remedy the ongoing offenses against him, forthwith.

## PLAINTIFF'S CLAIMS

**One.  INJUNCTION**

In the circumstances shown and to be further shown, the plaintiff is entitled to intervention by the Court with prison authorities, to afford plaintiff the proper care and relief he is obviously entitled to despite his prisoner status, and bring this gruesome history to a close,.  We would ask the Court for a firm mandatory Order on defendants GROUNDS and ELSON, and whoever their implicated underlings may be right now, directing them to begin immediately to provide plaintiff with whatever dietary, pain regimen or other ongoing care measures may be called for, according to independent medical evaluation; and to make immediate arrangements for him to receive whatever remedial oral surgery may be called for now, given that his condition has been prejudiced by defendants' depredations against him, again based on independent medical opinion.

<u>In the alternative</u>, or in addition, the Court is asked to consider ordering that plaintiff be transferred to the real CDCR medical facility, at Vacaville, so that his entire

problem can be addressed in a setting hopefully comparatively free of the virulent, anti-constitutional official scorn and hostility he has experienced at Salinas Valley.

### Two.   LIABILITY & DAMAGES

**First**, plaintiff demands judgment for compensatory damages against the named and J/J Doe defendants, and each of them, for his or her part in so heedlessly and callously causing and helping cause the prolonged physical and mental-emotional torment he has so needlessly suffered, for the one year-plus since he was injured — including the pain and suffering from improper care for his fractured jaw; the possible or probable permanent injury and impairment he may well be consigned to as a result of the described maltreatment and non-treatment of his injury; the pain and damage to his health of the prolonged period(s) during which he has gone hungry due to defendants' callousness; the problems caused by wrong and inadequate pain medicine defendants gave him, and the arbitrary deprivation of time in the fresh air of the recreation yard at the CTC—all through defendants' 'deliberate indifference to his serious medical needs', etc, as described above, in violation of the Eighth Amendment.

**Second**, plaintiff is also entitled to and demands judgment against defendants PARA and BAKER, and any implicated J/J Does, for violation of his retained First Amendment rights, where defendants knowingly, in violation of strict rules and with no justification whatsoever, repeatedly quashed and suppressed his written grievances ("602s"—Para, See Par. 16, p. 6, above) and medical requests (Form 7362—Baker, Par. 24, p. 8.)

**Third.**   Plaintiff avers that the described actions of all the defendants were malicious and oppressive, and displayed a callousness and wantonness so severe as to entitle plaintiff to punitive damages against the various defendants, as the Jury may see fit to award them.

///

**WHEREFORE,** this honorable Court is respectfully asked:

To find the plaintiff is suffering Irreparable Harm, and has no adequate remedy at Law, and accordingly to grant preliminary and permanent injunctive relief along the lines suggested above, to guarantee him immediate, adequate and appropriate attention for the injury to his jaw(s), and appropriate diet, and freedom from any retaliation against him by defendants or their colleagues, in the premises of the case, while he is in prison;

To award plaintiff judgment for compensatory damages in such amount as the Jury may determine;

To award plaintiff judgment for punitive damages according to the Jury's determination;

To award plaintiff Attorneys Fees per 42 USC 1988, and the costs of suit; and,

To grant such other and further relief as the Court deems just and proper.

Finally, In accordance with Rule 38(b), F. R. Civ P., and R. 3-6(a) of the Civil Local Rules, plaintiff Alonzo Smith hereby demands a jury trial.

Dated: May 1, 2013.                    Respectfully submitted,
                                       ____/S/_____
                                       Dennis Cunningham

                                       ____/S/_____
                                       Neil Colin Satterlund
                                       Attorneys for the Plaintiff

Counsel, and the plaintiff wish to thank Micah Clatterbaugh, now a *praeceptor*, for his substantial assistance in the preparation of this amended complaint.

---

*Smith v. Grounds et al.,* Case No. C-13-0246-PJH (PR)
First Amended Complaint

12